IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| U.S. Commodity Futures Trading Commission,<br><br>                Plaintiff,<br><br>      v.<br><br>Scott M. Ross, Maize Capital Management, LLC, and Maize Asset Management, LLC,<br><br>                Defendants. | )<br>)<br>)<br>)  No. 09 CV 05443<br>)<br>)  Judge Zagel<br>)<br>)<br>)<br>)<br>)<br>) |

**MOTION FOR SUPPLEMENTAL ORDER ASSESSING RESTITUTION AND A CIVIL MONETARY PENALTY AGAINST SCOTT M. ROSS, MAIZE CAPITAL MANAGEMENT, LLC AND MAIZE ASSET MANAGEMENT**

Plaintiff U.S. Commodity Futures Trading Commission ("Commission") respectfully requests this Court enter a supplemental order assessing restitution and a civil penalty against Scott M. Ross ("Ross") and his companies, Maize Capital Management, LLC ("Maize Capital") and Maize Asset Management, LLC ("Maize Asset") (collectively "Defendants"). In support of this Motion, the Commission states as follows:

### I.    PROCEDURAL BACKGROUND

1. On September 4, 2009, Plaintiff U.S. Commodity Futures Trading Commission (the "Commission" or "CFTC") filed the Complaint in this action against defendants Scott M. Ross ("Ross"), Maize Capital Management, LLC ("Maize Capital") and Maize Asset Management, LLC ("Maize Asset") (collectively, "Defendants") for Permanent Injunction, Civil Penalties, and Other Equitable Relief, seeking injunctive and other equitable relief for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 et seq. (2006), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC

Reauthorization Act of 2008 ("CRA")), § 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 et seq. (2009).

2. The Court entered a Consent Order of Permanent Injunction and for Other Statutory and Equitable Relief against Defendants on June 23, 2010 ("Consent Order"). D.E.10. The Court simultaneously terminated this matter. D.E. 9.

3. On January 8, 2014 this Court reopened this matter for the limited purpose of imposing appropriate monetary penalties. D.E. 13.

## FACTS

**The Civil Actions**

4. From early 2007 through February 2009, Defendant Ross operated several companies that purportedly invested in securities, life settlement contracts, and engaged in currency trading. Currency trading was conducted through the Fund, a commodity pool.

5. The Fund was established in 2008. According to the prospectus provided to participants and prospective participants, the purpose of the Fund was to "seek capital appreciation through commodities trading of foreign exchange, energy, precious metals and interest rate products." Trading in the Fund, however, focused exclusively on currency trading. The monies raised for the Fund were largely deposited in the Fund, and were dissipated by trading losses, trading expenses and overhead for the Fund.

6. Defendants solicited approximately 93 participants for the Fund. Those participants invested $6,962,395.07. *See* Exhibit A, Declaration of Aidan Gilbert.

7. On February 3, 2009, the United States Securities and Exchange Commission ("SEC") filed a complaint against defendant Ross, seeking to enjoin him from violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. This Court

entered an order freezing the assets of Ross and, among other entities, Maize Asset, Maize Capital and the Fund. *See SEC v. Ross*, Civil Action No. 09-683 (N.D. Ill.) D.E. 11. The Court further appointed Philip Stern as Receiver ("Receiver") for Ross and all his assets, including Defendants, and the Fund. *Id.* at 6.

8. The Receiver secured total cash funds in the approximate amount of $2.7 million, including the approximately $1,035,628 that was in the Fund at the time of his appointment. *SEC v. Ross*, D.E. 46 (Receiver's Plan for the Allocation of the Assets of Scott M. Ross and the Ross Entities) at p. 6. These funds were distributed as a percentage share of the assets, based upon the investor's Net Contributions, to all victims of Mr. Ross and his companies. *Id.* at 10.

9. Net Contributions for all investors totaled approximately $11,756,366. The Receiver collected and distributed to 325 individuals a total of $2,651,522.01, after accounting for fees and expenses. *SEC v. Ross*, D.E. 88 at 6.

10. Fund investors received a total of $1,559,576.18 from the distribution. Exhibit A. Therefore, total losses to Fund investors were $5,402,818.89. *Id.*

**The Criminal Action**

11. On November 2, 2010 the United States Attorney Office for the Northern District of Illinois filed a criminal information against Defendant Ross. See *United States v. Ross*, 10-cr-925 (N.D. Ill), D.E. 1. The United States charged Ross with fraud in connection with two of his investment scams, the Elucido fund and the Moondoggie fund, in violation of 18 U.S.C. §1341. *Id.*

12. Pursuant to a plea agreement, Defendant Ross was sentenced to a prison term of 72 months, and ordered to pay restitution in the amount of $3,699,834.45 to the victims of those frauds. *United States v. Ross*, D.E. 20.[1]

13. There was no provision in the criminal settlement for restitution to victims of the Fund fraud.

## MONETARY SANCTIONS

14. In this matter, the Commission seeks entry of a restitution order for the benefit of the victims of the Maize Fund, and a civil monetary penalty.

15. In determining the appropriate monetary sanctions, the parties have agreed that the allegations of the Complaint and the findings in the consent permanent injunction shall be taken as true. D.E. 10, p. 12.

16. Pursuant to Section 6c(d)(3) of the Act, 7 U.S.C. § 13a-1(d)(3), "the court may impose, on a proper showing . . . (A) restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses) . . . ."

17. Further, under section 6c of the Act, 7 U.S.C. § 13a-1, the Commission may seek civil monetary penalties from defendants found to have violated the Act. Section 6c of the Act, 7 U.S.C. § 13a-1, provides in pertinent part:

> (d)(1) In any action brought under this section, the Commission may seek and the court shall have jurisdiction to impose, on a proper showing, on any person found in the action to have committed any violation a civil penalty in the amount of not more that the higher of $140,000 or triple the monetary gain to the person for each violation.

---

[1] Defendant Ross is currently incarcerated at the United States Penitentiary Atwater, located in eastern California. He is scheduled for release in January 2017.

**Restitution**

18. Customer losses were proximately caused by the fraud perpetrated by defendants. Defendants solicited participants using a fraudulent "pitchbook" and confidential private placement memorandum ("CPPM") which contained materially false and misleading statements regarding how the Fund would be administered and omitted material factual information regarding the operation and participation in the Fund. Defendants then exacerbated the fraudulent solicitations by sending out materially false and misleading account statements which represented realized gains in forex trading, but omitted unrealized losses from those account statements. D.E. 1, paragraphs 29-39. These material misstatements and omissions were pervasive because all participants were required to sign the CPPM.

19. Where there are material omissions in the context of a fraudulent scheme the Court can presume the reliance of the Fund's participants. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972); *Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479, 485 (S.D. Fla. 1996); *see also Fed. Trade Comm'n v. Figgie, Int'l Inc.*, 994 F.2d 595, 605 (9th Cir. 1993) (actual reliance for restitution under section 13 of the FTC Act presumed where the FTC proved defendant made material misrepresentations, that the misrepresentations were widely disseminated, and that consumers purchased defendant's product).

20. The purpose of restitution is to restore the status quo and return the parties to the positions they occupied before the transactions at issue occurred. *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946). Thus, the amount of restitution should be calculated as the difference between what defendants obtained and the amount customers received back.

21. As described above, the difference between what defendants received from customers and what customers received back from defendants (including distributions from the receiver in the SEC case) is $5,402,818.89.

**Civil Monetary Penalty**

22. The CFTC's Complaint also includes a demand for a civil monetary penalty. D.E. 1, p. 17. Section 6c(d)(1) of the Act provides that "the Commission may seek and the Court shall have jurisdiction to impose . . . on any person found in the action to have committed any violation, a civil penalty in the amount of not more than the higher of $100,000 or triple the monetary gain to the person for each violation." 7 U.S.C. §13a-1(d)(1) (2012). The Regulations adjust the statutory civil monetary penalty of $100,000 for inflation. See 17 C.F.R. § 143.8. For the period at issue, the statutory civil monetary penalty was $130,000 per violation. *Id*.

23. The CFTC has set forth several factors to consider in assessing a civil monetary penalty. These factors include: the relationship of the violation at issue to the regulatory purposes of the CEA and whether or not the violations involved core provisions of the CEA; whether scienter was involved; the consequences flowing from the violations; financial benefits to a defendant; and harm to customers or the market. In re Grossfeld, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,921 at 44,467-8 (CFTC Dec. 10, 1996), aff'd 137 F.3d 1300 (11th Cir. 1998). Civil monetary penalties should "reflect the abstract or general seriousness of each violation and should be sufficiently high to deter future violations," which means that civil monetary penalties should make it financially detrimental to a defendant to fail to comply with the Commodity Exchange Act and Regulations so that the defendant would rather comply than risk a violation. *Id*.

24. This case warrants the imposition of a civil monetary penalty. Because the benefit to the defendants is of an uncertain value, the entry of a penalty based on the number of violations by the defendants is an appropriate measure. Defendants violated Sections 4b(a)(1)(A) – (C), 4b(a)(2)(A) – (C), 4*o*(1)(A) and (B), 4m, and Regulations 4.20 and 4.30. D.E. 9, p. 6-7. A penalty of $130,000 for each substantive provision violated yields a total civil penalty of $1,300,000.00. Given the pervasive nature of the fraud, and the enormous losses suffered by the victims, this is an appropriate penalty for the Court to order

## CONCLUSION

25. Wherefore the Commission respectfully requests the Court enter the proposed monetary judgment against defendants, jointly and severally in the full amount of restitution and a civil penalty in the amount of $1,300,000.00.

Date: August 7, 2014

Respectfully submitted,
U.S. COMMODITY FUTURES
TRADING COMMISSION
525 West Monroe Street, Suite 1100
Chicago, IL 60661

/s/ Joseph Konizeski
Joseph Konizeski
Chief Trial Attorney
(312) 596-0546
(312) 596-0714 (facsimile)
jkonizeski@cft.gov